UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

REGINO DOMINGUEZ,

Petitioner,

-against-

**MEMORANDUM & ORDER**

**12-CV-3269 (NGG)**

DAVID ROCK, Superintendent, Upstate
Correctional Facility,

Respondent.
-------------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Regino Dominguez ("Petitioner" or "Dominguez") brings this pro se Petition

for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his New York State

convictions for murder in the second degree, assault in the second degree, and criminal

possession of a weapon in the fourth degree. (Pet. (Dkt. 1).)[1]  In his Petition, Dominguez asserts

two claims: (1) that there was insufficient evidence to convict him of the second-degree murder

charge; and (2) that he received ineffective assistance of counsel.  For the reasons set forth

below, Dominguez's Petition is DENIED.

I.      **Background**

        A.      **Underlying Facts**

        The following testimony was elicited at Petitioner's trial.  Sometime after midnight on

October 31, 2004, brothers Franklin and Patricio Guaman, and Patricio's friend, Marco Chabla,

were socializing at El Rodeo Bar in Corona, Queens.  (Trial Tr. ("Tr.") (Dkts. 15-1 through 15-6)

---

[1] Because Petitioner is proceeding pro se, the court is "obliged to construe [his] pleadings and papers liberally."
LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir. 1991).  A pro se litigant's submissions are to be interpreted "to raise
the strongest arguments that they suggest."  Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Still, a litigant's
pro se status does not insulate him from complying with relevant procedural rules.  Gibson v. Wise, 331 F.
Supp. 2d 168, 169 (E.D.N.Y. 2004).

at 432, 439, 455-56, 478-79.) Around 1:30 a.m., Petitioner and his co-defendant, Sergio Carillo, approached the three while they sat at a table. (Id. at 441, 468.) Petitioner had a machete in his hand, and Carillo had a knife; Franklin, Patricio, and Chabla were unarmed. (Id. at 361-62, 444, 486, 542-43.) Carillo stabbed Patricio multiple times in the stomach and the chest. (Id. at 485-86.) When Chabla attempted to help Patricio, Carillo stabbed him as well. (Id. at 486.) Franklin, too, sought to help his brother, but Petitioner struck him several times with the machete (id. at 443-44, 529), wounding him numerous times on the face, nose, and back (id. at 529, 531). After the attack, Petitioner and Carillo ran out of the bar together. (Id. at 532.) Franklin chased after Petitioner, but he went back into the bar after Petitioner raised the machete and asked him, "You want to die too?" (Id. at 533-34.)

Patricio was taken to Elmhurst Hospital where he later died from his injuries.[2] (Id. at 858-71.) Chabla suffered injuries to his heart (id. at 678), and colon (id. at 681), and he was taken to Elmhurst Hospital where he received life-saving emergency thoracic surgery (id. at 671, 676, 684-85). Franklin sustained deep cuts to his face, nose, back, and arm, which resulted in permanent scars. (Id. at 538-39.)

**B.    Trial Court Proceedings**

Petitioner and Carillo were charged in New York Supreme Court, Queens County, with two counts of murder in the second degree, two counts of attempted murder in the second degree, two counts of assault in the first degree, one count of assault in the second degree, and two counts of criminal possession of a weapon in the fourth degree. (Aff. of Ushir Pandit in Opp'n to

---

[2] A New York City medical examiner testified, however, that none of these injuries were consistent with being caused by a machete. (Tr. at 866.)

Pet. ("Pandit Aff.") (Dkt. 13) ¶ 4.)[3] On September 20, 2006, Carillo pled guilty to manslaughter in the first degree, and on October 10, 2006, he was sentenced to a determinate term of 18 years of imprisonment. (Id. at 3 n.1.)

On August 8, 2007, Petitioner proceeded to a jury trial before Justice Robert J. Hanophy of the New York Supreme Court. (Id. ¶ 5.) At trial, the State presented testimony from Franklin and Chabla, the surviving victims. (Tr. at 477-570.) Eyewitnesses Lucy Ibarlucea, an employee of the bar who was a friend of Patricio's and Chabla's, and Moises Leyva-Ramirez, the manager of the bar, also testified for the prosecution. (Id. at 345-473.) The State also presented testimony from various police officers, who had collected and tested evidence in addition to interviewing witnesses. (Id. at 575-663, 698-782.) Furthermore, the prosecution introduced a written statement made by Petitioner, in which he admitted to possessing the machete and using it during the altercation. (Id. at 721-23.)

Petitioner presented testimony from New York City Police Officer Wayne Rothschild and Lieutenant Jose Jacomes to show that prosecution witnesses had made prior inconsistent statements. (Id. at 878-919.) Justice Hanophy struck a significant portion of Officer Rothschild's testimony, however, because only Lieutenant Jacomes had personally interviewed the witnesses and, therefore, Officer Rothschild's testimony constituted double hearsay. (Id. at 919-36.)

On August 23, 2007, Petitioner was convicted of murder in the second degree,[4] both counts of assault in the first degree, assault in the second degree, and both counts of criminal

---

[3] Two paragraphs of the affidavit are labeled "4." (Pandit Aff. at 2, 3.) This citation refers to the second such paragraph. (See id. at 3.)

[4] During the charge conference, the State moved to dismiss the charge for second-degree murder based on a depraved-indifference theory. (Tr. at 844.)

possession of a weapon in the fourth degree. (Id. at 1069, 1095-1100.) Petitioner was found not guilty of both counts of attempted murder in the second degree. (Id.)

On February 8, 2008, Petitioner was sentenced to a prison term of 25 years to life on the second-degree murder conviction, determinate terms of 25 years on each of the first-degree assault convictions, a determinate term of seven years on the second-degree assault conviction, and determinate terms of one year on each of the two fourth-degree weapon possession convictions. (Feb. 8, 2008, Hr'g Tr. ("Sentencing Tr.") (Dkt. 15-6) at 10-11.) The terms of imprisonment for second-degree murder and each of the two first-degree assault convictions were ordered to run consecutively to each other; the terms of imprisonment for second-degree assault and fourth-degree weapon possession were ordered to run concurrently with the other terms and with each other. (Id.) The court also imposed a term of five years of post-release supervision on each of the first-degree assault convictions, and a term of three years of post-release supervision on the second-degree assault conviction. (Id. at 11.)

## C.    Direct Appeal

On April 28, 2010, Petitioner, through assigned counsel, appealed his conviction to the Appellate Division, Second Department, raising two claims. (See Br. for Def.-Appellant ("Pet'r's Appellant Br.") (1st State Court R. (Dkt. 14) at ECF p. 1) at 4.)[5] First, Petitioner argued that the trial court improperly struck Officer Rothschild's testimony. (Id.) Second, Petitioner claimed that his sentence was excessive. (Id.)

On July 12, 2010, the State responded to Petitioner's appeal, arguing first that his claim regarding Officer Rothschild's testimony was unpreserved and meritless. (Br. for Resp't ("Resp't's Appellate Br.") (1st State Court R. at ECF p. 45) at 17.) In the alternative, the State

---

[5] Citations to the state court record cite first to the beginning of a document using ECF pagination and then to specific pages using the document's internal pagination.

asserted that Rothschild's testimony was unreliable double hearsay and, therefore, the trial court properly exercised its discretion in striking it. (Id. at 17-32.) The State also argued that the court properly exercised its discretion in sentencing Petitioner to an aggregate prison term of 75 years to life, given the nature of the crimes for which Petitioner had been convicted. (Id. at 32-35.)

In the meantime, Petitioner sought permission to file a pro se supplemental brief, and on July 12, 2010, the Appellate Division granted him leave to do so.[6] (See Statement Pursuant to Rule 5531 (Pro Se Suppl. Appellant's Br. ("Suppl. Appellant Br.") (1st State Court R., Ex. 1 (Dkt. 14-1) at ECF p. 1) at x, ¶ 5.) On October 21, 2010, Petitioner filed his supplemental brief in which he raised a claim of ineffective assistance of counsel, alleging that trial counsel was constitutionally ineffective in failing to: (a) assert a justification defense; (b) conduct any pre-trial investigation or produce defense witnesses to support a justification defense; (c) object to the trial court's jury instructions regarding intent; (d) object to the court's use of unsworn interpreters; and (e) object to the imposition of an allegedly excessive and illegal sentence or to present mitigating circumstances. (See Suppl. Appellant Br. at 3.)

On January 18, 2011, the State responded to Petitioner's supplemental brief, arguing that his claims should not be considered on direct appeal because they were based entirely on Petitioner's off-the-record assertions. (Suppl. Br. for Resp't ("Resp't's Suppl. Br.") (1st State Court R., Ex. 2 (Dkt. 14-2) at ECF p. 1) at 9-10.) In any event, the State maintained that Petitioner had, in fact, received effective assistance of counsel. (Id. at 12.)

On May 17, 2011, the Appellate Division—"as a matter of discretion in the interest of justice"—reduced Petitioner's sentence on the second-degree murder conviction to a prison term of 20 years to life, and ordered all sentences to run concurrently. People v. Dominguez, 923

---

[6] The decision granting Petitioner's request is not a part of the record.

N.Y.S.2d 207, 208 (App. Div. 2011). Thus modified, the Appellate Division affirmed the judgment. Id. The court agreed with the State that Petitioner's contention with respect to Rothschild's testimony was unpreserved for appellate review; that Petitioner's ineffective-assistance-of-counsel claim could not be reviewed on direct appeal; and that, to the extent it was reviewable, the ineffective-assistance claim was meritless. Id. at 209.

On February 24, 2012, the Court of Appeals denied Petitioner's application for leave to appeal the Second Department's decision. People v. Dominguez, 965 N.E.2d 964 (N.Y. 2012) (table decision).

### D. Motion to Vacate Judgment

On March 10, 2010—before he filed his direct appeal—Petitioner moved pro se to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (See Suppl. Aff. in Supp. of Mot. to Vacate J. ("Pet'r's Suppl. Aff.") (1st State Court R. at ECF p. 84) at 1.) Petitioner claimed that his trial counsel had provided ineffective assistance by: failing to make timely objections; failing to present any defense; failing to move to suppress Petitioner's statements to police; failing to contest the adequacy of the court interpreters; failing to argue that the State had not established a prima facie case of Petitioner's guilt; making an ineffective opening statement; and making misstatements of fact and law during the trial and sentencing proceedings. (Id. at 2.)

On September 17, 2010, Petitioner supplemented his motion to vacate. (Id.) In this submission, Petitioner claimed that the State failed to disclose a statement by Raquel Gomez Ramirez—an alleged eyewitness—pursuant to its obligation under Brady v. Maryland, 373 U.S. 83 (1963), and that his trial counsel was constitutionally ineffective in failing to use Ramirez's statement to support Petitioner's justification defense. (Pet'r's Suppl. Aff. at 3-13.)

Petitioner further claimed that the imposition of consecutive sentences violated New York Penal Law § 70.25 and People v. Rosas, 868 N.E.2d 199 (N.Y. 2007). (Id. at 12-13.)

The State opposed Petitioner's motion to vacate on November 1, 2010. (Affirmation of Ushir Pandit in Opp'n to Def.'s Mot. to Vacate J. ("Pandit Opp'n Aff.") (1st State Court R., Ex. 1 at ECF p. 65); Mem. of Law ("Mem. in Opp'n to Mot. to Vacate") (1st State Court R., Ex. 1 at ECF p. 78).) The State maintained that Petitioner's motion should be denied under New York Criminal Procedure Law § 440.10(2)(b), because many of his claims were based on matters that appeared on the record and his direct appeal was pending. (Id. at 14-17.) On the merits, the State argued that trial counsel had provided effective representation. (Id. at 20.) In support of its argument, the State provided an affirmation from trial counsel. (Affirmation of Jonathan Latimer ("Latimer Affirmation") (1st State Court R., Ex. 1 at ECF p. 93).) Furthermore, the State averred that even if Petitioner's claims demonstrated counsel's deficient performance, Petitioner failed to show that any deficiencies resulted in prejudice. (See id. at 27.)

On November 10, 2010, the trial court denied Petitioner's motion to vacate as both procedurally barred and meritless. (People v. Dominguez, Ind. No. 3043/04, slip op. at 3 (N.Y. Sup. Ct. Nov. 10, 2010) (1st State Court R., Ex. 2 at ECF p. 35).) The court agreed with the State that a majority of Petitioner's claims regarding trial counsel's representation were subject to the § 440.10(2)(b) procedural bar. (Id. at 1-2.) The court also held that Petitioner had failed to state a claim under New York Criminal Procedure Law § 440.30(4)(a), insofar as none of counsel's purported deficiencies rose to a level of constitutional ineffectiveness, and all were belied by counsel's affirmation. (Id. at 2.) Moreover, the court found that Petitioner's ineffectiveness claims were substantively meritless, noting that "counsel provided meaningful representation" to Petitioner. (Id.)

7

On July 6, 2011, the Appellate Division denied Petitioner's application for leave to appeal the denial of his motion to vacate. (Decision & Order on Appl., <u>People v. Dominguez</u>, No. 2011-02803 (N.Y. App. Div. July 6, 2011) (1st State Court R., Ex. 2 at ECF p. 108).)

### E.    Petition for Writ of Habeas Corpus

Dominguez, who is currently incarcerated pursuant to his February 8, 2008, conviction, filed the instant Petition on June 20, 2012. (<u>See</u> Pet.) He asserts two claims: (1) that the evidence adduced at trial was legally insufficient to support his conviction for murder in the second degree; and (2) that he received ineffective assistance of counsel. (<u>Id.</u> ¶ 12.) Specifically, Petitioner contends that trial counsel failed to: (a) present a justification defense; (b) conduct a reasonable pretrial investigation; (c) present and utilize an exculpatory defense witness and <u>Brady</u> material; and (d) object to the use of unsworn interpreters. (<u>Id.</u>) In addition, Petitioner requests that the court hold his Petition in abeyance pending the resolution of Freedom of Information Law ("FOIL") requests that he submitted to the Queens County District Attorney's Office (the "QDAO") and the New York City Police Department (the "NYPD") via letter dated February 24, 2012. (<u>See id.</u> at 7.)

Respondent filed his opposition on February 27, 2013. (Pandit Aff.; Mem. of Law in Opp'n to Pet. ("Resp't's Opp'n") (Dkt. 13).) Petitioner filed a reply through papers dated January 30, 2014. (Traverse ("Reply") (Dkt. 19).)

## II.    Habeas Corpus Standards

A district court "shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In order to obtain habeas relief, however, a person in custody pursuant to a state court judgment must generally meet three requirements: (1) exhaustion; (2) absence of procedural bar;

and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

## A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y. Aug 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278). "This means, in essence, that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a petitioner does not cite any federal constitutional provisions, he may fairly present a federal claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Id. at 194.

9

Notably, every claim that a petitioner makes in a § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. This "total exhaustion" rule requires that a "district court . . . dismiss habeas petitions containing both unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). In an important exception to the total exhaustion rule, however, a district court may deny an entire habeas petition on the merits notwithstanding the petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). In other words, a court may deny, but may not grant, "mixed petitions" on the merits. Caswell v. Racetti, No. 11-CV-153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26, 2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

## B.  Procedural Bar

In addition to the exhaustion requirement, "[i]t is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." Cone v. Bell, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Id. However, "the adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks, citation, and alteration omitted). Thus, courts "have an independent duty to scrutinize the application of state rules that bar [their] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so—for example, if the time to file a state-court appeal has passed—then that claim is considered

10

procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that the petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but the petitioner is barred from litigating the merits of that claim in federal habeas proceedings (internal quotation marks and citation omitted)). A court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule—that is, if a claim that has not been presented to the state court can no longer be brought in state court, the federal district court may consider the petitioner's remaining claims on the merits so long as those claims have been exhausted. See Turner, 262 F.3d at 122-23.

"Once a claim is found to be procedurally defaulted, a federal court may grant habeas relief on such claim only if the petitioner has 'demonstrate[d] cause for the default and prejudice from the asserted error,' or a 'fundamental miscarriage of justice.'" Allison, 2011 WL 3298876, at *6 (quoting House v. Bell, 547 U.S. 518, 536 (2006), and Murray v. Carrier, 477 U.S. 478, 496 (1986)). "Showing 'cause' usually requires a demonstration of 'some external impediment preventing counsel from constructing or raising the claim.'" Id. (quoting Murray, 477 U.S. at 492). "A miscarriage of justice claim requires a petitioner to make a showing of actual innocence." Id. (citing Schlup v. Delo, 513 U.S. 298, 326-27, and n.44 (1995)).

## C.   AEDPA Deference

When a state court has reached the merits of a claim asserted in a § 2254 habeas petition,[7]

the state court's decision is reviewed under the deferential standard set forth in AEDPA, which

provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the

Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard v.

Walker, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks and citation omitted).  A

state court decision is "contrary to" clearly established federal law "if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

A state court decision is an "unreasonable application" of clearly established federal law

"if the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

---

[7] The fact that a state court does not explicitly refer to specific constitutional amendments or relevant federal case law is of no consequence in determining whether a state court adjudicated the claim on the merits. See, e.g., Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (holding federal habeas court must defer to state court decision on the federal claim "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law"); Taylor v. Connelly, 18 F. Supp. 3d 242, 252 (E.D.N.Y. 2014).

Thus, the standard is whether the state court was "objectively unreasonable in doing so," and not merely "incorrect or erroneous." Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) (internal quotation marks and citation omitted) (emphasis in original). In other words, the petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

Furthermore, after AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A state court's decision "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III. Discussion

### A. Insufficient Evidence

Petitioner argues that the evidence adduced at trial was insufficient to prove intentional murder, and that his conviction therefore violates his rights to due process. (See Reply at 3-4.) For the following reasons, this claim fails.

#### 1. Exhaustion and Procedural Bar

As noted above, a state prisoner seeking federal habeas review of his conviction must first exhaust his available state remedies. See 28 U.S.C. § 2254(b)(1)(A); Baldwin v. Reese, 541 U.S. 27, 29 (2004). This affords the state court the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Baldwin, 541 U.S. at 29 (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam)). A claim is considered exhausted if the petitioner informed the state court of both the factual and legal basis for the federal claim, Picard, 404 U.S.

13

at 277-78; Daye, 696 F.2d at 191, and has "fairly presented" the federal claim to the state court, Picard, 404 U.S. at 275. It is a petitioner's burden to demonstrate that he has fully exhausted available state court remedies. Fink v. Bennett, 514 F. Supp. 2d 383, 388 (N.D.N.Y. 2007); Colon v. Johnson, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998).

Respondent argues that Petitioner is unable to satisfy this burden because he never raised a claim of insufficient evidence in either set of proceedings in state court. (See Resp't's Opp'n at 25.) The court agrees. In both his direct appeal and in his motion to vacate judgment, Petitioner failed to argue that the evidence was insufficient to support his conviction. (See Pet'r's Appellant Br.; Pet'r's Suppl. Aff.) Thus, Petitioner's legal insufficiency claim is unexhausted.

While Petitioner did argue in state proceedings that his trial counsel provided constitutionally ineffective assistance by failing to object to the court's jury instructions with respect to "intent" and "acting in concert," this fact does not change the court's conclusion. Quite simply, a claim based on the sufficiency of the evidence is different from a claim that the trial court improperly instructed the jury, or an ineffective-assistance claim based on trial counsel's failure to object to improper instructions.[8] See Disimone v. Phillips, 461 F.3d 181, 185 (2d Cir. 2006) (finding claim of unconstitutional vagueness in state court did not exhaust a claim of legal insufficiency in federal court); Horton v. Ercole, 557 F. Supp. 2d 308, 313-14 (N.D.N.Y. 2008) (finding weight-of-the-evidence claim raised in state court did not exhaust legal-insufficiency claim raised in habeas petition). As a result, the court will treat this claim as unexhausted. See Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991).

---

[8] Moreover, the court addresses Petitioner's ineffective assistance claim on this basis in Part III.B.d, infra.

Furthermore, Petitioner's claim is procedurally barred because he now has no available state court forum in which to assert it. See Coleman v. Thompson, 501 U.S. 722, 735 (1991). A claim regarding the legal sufficiency of the evidence at trial is one that is based on the record and must therefore be raised on direct appeal. Grey, 933 F.2d at 121. However, Petitioner has already completed the one direct appeal and leave application to which he is entitled; thus, he is unable to raise this claim in the state appellate courts. See 22 N.Y.C.R.R. § 500.10(a); cf. Grey, 933 F.2d at 120-21. Nor can Petitioner bring this claim in a motion to vacate his judgment of conviction in the state court, as such a motion does not address claims based on facts that appear on the appellate record. See N.Y. Crim. Proc. Law § 440.10.[9]

Petitioner therefore is unable to satisfy the exhaustion requirement. Even if this claims were exhausted, however, the court finds it to be procedurally barred from review because of Petitioner's neglect in properly presenting it in the state courts. See Coleman, 501 U.S. at 735; Harris v. Reed, 489 U.S. 255, 263 (1989).

2.     Cause and Prejudice, or a Miscarriage of Justice

To obtain review of a procedurally barred claim, a petitioner must both establish cause for the procedural default and show that he will be prejudiced if the court does not review the claim. In the alternative, he may show that a fundamental miscarriage of justice will result from non-review of the claim. See Murray, 477 U.S. at 492.

Here, Petitioner has failed to address any of these requirements, and, as a result, the court will not consider this claim. See Silent v. Perlmann, No. 07-CV-4524 (JFB), 2008 WL 5113418,

---

[9] Petitioner could not exhaust this claim using a post-conviction motion to vacate judgment because, according to the terms of § 440.10, which is the statute governing post-conviction motions in New York state court, claims which should have been raised on direct appeal cannot be reviewed in a motion made pursuant to § 440.10. Rather, these claims are subject to a mandatory procedural bar which prohibits courts from reviewing these claims in a motion to vacate judgment. See N.Y. Crim. Proc. Law § 440.10(2) (proscribing collateral review of claims that could have been raised on direct appeal).

at *7 (E.D.N.Y. Nov. 25, 2008) (holding that, if "petitioner does not offer any information regarding cause for the default or a miscarriage of justice, the claim should be precluded"); see also Ward v. Hinsley, 377 F.3d 719, 726 (7th Cir. 2004) (finding that, because petitioner did not argue "cause and prejudice or that a fundamental miscarriage of justice would occur if his claims were not addressed, the district court was correct to find the claims barred by the procedural default doctrine"), cert. denied, 543 U.S. 1011 (2004); Gordon v. Graham, No. 09-CV-1368 (CBA), 2012 WL 293620, at *8 (E.D.N.Y. Jan. 31, 2012); Blue v. Duncan, No. 03-CV-1202 (LTS) (GWG), 2004 WL 1172793, at *30 (S.D.N.Y. May 27, 2004).

In any event, a cause-and-prejudice argument in this case would fail on the merits. First, Petitioner has failed to establish cause. "Cause" for a procedural default generally depends upon a petitioner's showing that some objective element external to the defense impeded counsel's efforts to comply with a state's procedural rules. See Amadeo v. Zant, 486 U.S. 214 (1988); Murray, 477 U.S. at 488. If Petitioner cannot establish cause for his procedural default, the court need not consider whether Petitioner would be prejudiced by the rejection of this claim on the basis of his procedural default. See Murray at 498 (noting that courts should adhere to the cause and prejudice test in the conjunctive); Francis v. Henderson, 425 U.S. 536, 542 (1976) (requiring both cause for procedural default and a showing of actual prejudice); Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Petitioner has not shown, and cannot show, cause for his default, since no apparent facts or circumstances prevented him from raising his sufficiency challenge in state court.

16

Furthermore, while ineffective assistance of counsel may sometimes constitute cause, that is not the case here, as Petitioner never claimed that his appellate attorney was ineffective for failing to raise this claim. See Edwards v. Carpenter, 529 U.S. 446, 452 (2000) (citing Murray, 477 U.S. at 489); Horton, 557 F. Supp. 2d at 323 (finding no cause, in part because petitioner never claimed ineffective assistance of appellate counsel based on a failure to raise a legal insufficiency claim in state court).

Moreover, because Petitioner has failed to show cause for his procedural default, the court need not decide whether he was prejudiced. See id. at 323. At any rate, Petitioner cannot establish that he will be prejudiced by the court's reliance on the procedural bar because his underlying claim is meritless. Even when reviewing the evidence in the light most favorable to Petitioner, a rational trier of fact could have found the essential elements of second-degree murder and related crimes beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); N.Y. Penal Law § 125.25 (McKinney 2006) (setting forth elements for second-degree murder).

Lastly, Petitioner has failed to establish that a fundamental miscarriage of justice occurred. Since Petitioner has failed to address this issue, the court declines to consider it as well. See Silent, 2008 WL 5113418, at *22 (holding that, if a petitioner fails to offer information regarding a miscarriage of justice, the claim should be precluded).

Regardless, this exception to non-review of procedurally barred claims generally requires a petitioner to show that he is factually innocent by relying on new evidence that was not available to the jury, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." Schlup, 513 U.S. at 324-25; see also Bousley v. United States, 523 U.S. 614, 623-24 (1998). Petitioner has failed to address, much less satisfy this

17

burden. Given the overwhelming evidence produced at trial, Petitioner could not prove that he is factually innocent.

### 3. Merits

Alternatively, even if there were grounds for the court to excuse Petitioner's procedural default, his insufficiency claim would fail on the merits. Petitioner claims that there was insufficient evidence to convict him of the crime, and that he was denied due process when defense counsel failed to object to the court's final instructions, which failed to inform the jury that Petitioner had to have the specific or requisite intent to kill in order to be convicted of intentional murder. (Reply at 3.)

A federal court will not grant habeas relief to a state prisoner challenging his conviction for insufficient evidence if "after reviewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Virginia, 443 U.S. at 319. Thus, once a jury has found a defendant guilty, a habeas court may "impinge[ ] upon jury discretion only to the extent necessary to guarantee the fundamental principles of due process of law." Johnson v. Louisiana, 406 U.S. 356 (1972) (internal quotation marks omitted).

Under New York law, a person is guilty of murder in the second degree when, inter alia, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 125.25 (McKinney 2006).

Reviewing the evidence in the light most favorable to the prosecution, the court finds that a trier of fact could have found the essential elements of second-degree murder beyond a reasonable doubt. See Virginia, 443 U.S. at 319; Johnson, 406 U.S. at 362. The primary evidence against Petitioner was the eyewitness testimonies of the surviving victims, Marco

Chabla and Franklin Guaman (Tr. at 477-450), as well as Lucy Ibarlucea and Moises Ramirez (id. at 346-471). These witnesses testified that Petitioner used a machete to attack and threaten the victims. (Id. at 443-44, 486, 529, 531, 533-34.) Additionally, various police officers, who collected evidence, tested evidence, and interviewed the witnesses, implicated Petitioner in the crime. (Id. at 575-655.) Finally, Petitioner's statement, in which he admitted to possessing the machete and using it in the altercation, was also presented to the jury. (Id. at 722.) Accordingly, the court finds that Petitioner's due process rights were not violated by this conviction, and his claim is denied as meritless.

### B.    Ineffective Assistance of Counsel

Petitioner has failed to establish that the state court's rejection of his claims of ineffective assistance of trial counsel was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Furthermore, the state court's decision rejecting Petitioner's ineffective-assistance claims is entitled to deference under two standards: (1) that of 28 U.S.C. § 2254(d), which states that a federal court may not grant habeas relief on any ground adjudicated on the merits in state court unless the petitioner establishes that the state court determination is contrary to, or an unreasonable application of, clearly established federal law as established by the United States Supreme Court; and (2) the separate standard of deference applied to ineffective-assistance-of-counsel claims generally. See Harrington, 562 U.S. at 105 (citing Strickland v. Washington, 466 U.S. 668 (1984)). Accordingly, the court denies Petitioner's ineffective-assistance claims on all grounds.

### 1.    Exhaustion and Procedural Bar

Petitioner claims that his counsel was ineffective for failing to: (1) present a justification defense; (2) conduct any pre-trial investigation; (3) present and utilize an exculpatory defense

witness and <u>Brady</u> material; and (4) object when the court interpreters were not sworn in as required. (Reply at 8-15.) Petitioner also brought these claims in state court, both in his motion to vacate his judgment of conviction and in his supplemental brief to the Appellate Division. (<u>See</u> Suppl. Appellant Br.; Pet'r's Suppl. Aff.)

Although both the trial court and the Appellate Division denied some of Petitioner's ineffective-assistance claims on state procedural grounds, each court determined the merits of the claims, which were not barred from review. <u>People v. Dominguez</u>, 84 A.D. 3d 1111, 2011 N.Y. (App. Div. 2011). (<u>See also</u> <u>People v. Dominguez</u>, Ind. No. 3043/04, slip op. at 2 (N.Y. Sup. Ct. Nov. 10, 2010).) Accordingly, this court reviews Petitioner's claims on the merits but finds that the claims fail under the standard established in <u>Strickland</u>. <u>See</u> 466 U.S. at 687.

### 2. Merits

It is well-established that an indigent defendant is guaranteed the right to counsel. U.S. Const. amend. VI; <u>Argersinger v. Hamlin</u>, 407 U.S. 25 (1972); <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963). The Supreme Court has recognized that the right to counsel guaranteed under the Sixth Amendment is "the right to the effective assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970).

In <u>Strickland</u>, the Court established a two-prong test that a petitioner must meet to sustain a claim of ineffective assistance. The petitioner must show first that counsel's performance was deficient and, second, that "the deficient performance prejudiced the defense," to the extent that the petitioner was deprived of "a fair trial, a trial whose result is reliable." <u>Player v. Berry</u>, 785 F. Supp. 339, 344-45 (E.D.N.Y. 1992) (citing <u>Strickland</u>, 466 U.S. at 687). A petitioner must overcome "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." <u>Player</u>, 785 F. Supp. at 345; <u>Strickland</u>, 466 U.S. at 689.

### a.    *Failure to Present a Justification Defense*

Petitioner first claims that trial counsel was ineffective for failing to present the defense that Petitioner was justified in his use of deadly force.

Under New York law, a defendant may use deadly force to defend himself only if: (1) he subjectively believes that the use of deadly force is necessary; (2) a reasonable person in the defendant's position would believe that the use of deadly force is necessary; and (3) the defendant does not "know [ ] that he can with complete safety as to himself and others avoid the necessity of [using deadly force] by retreating." Brown v. Artuz, 124 F.3d 73, 81 (2d Cir. 1997) (quoting N.Y. Penal Law § 35.15(1)-(2) (McKinney 1987)); see generally People v. Goetz, 68 N.Y.2d 96 (1986).

Even assuming, arguendo, that Petitioner could establish the first element of the justification defense, the evidence is insufficient to support a reasonable inference in his favor on the second or third element. Petitioner and Carillo were the only individuals with weapons; the victims were unarmed. (Tr. at 361-62, 444, 486, 542-43.) Moreover, nothing in the record suggests that Petitioner somehow believed, mistakenly, that either of the victims possessed a weapon at any time during their struggle. The evidence presented at trial showed that Petitioner entered the bar with a machete, waived the machete around in order to prevent the deceased's friends from coming to the deceased's aid, and struck and injured two of the deceased's friends. (Id. at 722.)

Despite this evidence, counsel attempted to show that Petitioner had not stabbed anyone and that he only became involved in the struggle to help his friend, who was being attacked by the victims. (Id. at 841-45.) Based on this theory, at the end of trial, counsel asked the court to instruct the jury on justification. (Id.) Thus, contrary to Petitioner's claim, counsel did, in fact,

make substantial efforts to present a justification defense, though these efforts likely were futile. Accordingly, Petitioner has failed to show that counsel was deficient and, likewise, cannot show that any deficiency resulted in prejudice.

### b. Failure to Conduct Pretrial Investigations and to Produce Available Defense Witnesses

Petitioner next claims that counsel was ineffective for failing to present, in English, the testimony of Ms. Raquel Ramirez, which Petitioner alleges was <u>Brady</u> material and would have supported a justification defense. The court finds that (1) Ramirez's statement does not qualify as <u>Brady</u> material, (2) the statement would not have supported a justification defense, and (3) counsel therefore was not ineffective for failing to present the statement.

Under <u>Brady</u> and its progeny, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001); <u>see also</u> <u>Brady</u>, 373 U.S. at 87 ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." <u>Coppa</u>, 267 F.3d at 139; <u>see also</u> <u>Giglio v. United States</u>, 405 U.S. 150, 153-55 (1972).

The fact that Ramirez did not testify at Petitioner's trial presents no obstacle to the application of <u>Brady</u> and its progeny. Although the Second Circuit has never expressly stated that the Government must disclose exculpatory and impeachment materials pertaining to nontestifying witnesses, that conclusion flows inescapably from prior cases. In <u>Leka v. Portuondo</u>, 257 F.3d 89 (2d Cir. 2001), for example, the circuit court found a <u>Brady</u> violation and granted habeas relief based on a prosecutor's failure to disclose exculpatory information

22

from a police officer who did not testify at the defendant's trial. Id. at 102-03, 106. The officer's observations of the crime scene "were favorable to the defense" and contradicted the observations of two eyewitnesses who testified for the prosecution. Id. at 199.

The Second Circuit considered a similar situation in United States v. Orena, 145 F.3d 551 (2d Cir. 1998), where "[t]he district court granted [the defendants'] motions for a new trial on the basis that the government violated its Brady obligations by failing to disclose information that defendants could have used to impeach the credibility of out-of-court statements made by [a] co-conspirator . . . that were admitted at trial under Fed. R. Evid. 801(d)(2)(E)." Id. at 553 (citation omitted). The undisclosed evidence in Orena was the status of an out-of-court declarant as a government informant, as well as several internal FBI documents reflecting that the declarant had lied about other murders and his role in them. Id. at 555-56. The court "reverse[d] so much of the order as granted [the defendants'] motion for a new trial" only because "the impeachment evidence withheld by the government [did] not meet the Brady standard of 'materiality.'" Id.

In Orena and Leka, the circuit court did not question Brady's applicability to disclosure concerning out-of-court declarants. Instead, it focused on whether the defendant had established a Brady violation. Therefore, it is clear that Brady and its progeny require disclosure of exculpatory and/or impeachment materials whether those materials concern a testifying witnesses or a hearsay declarant. United States v. Jackson, 345 F.3d 59, 71 (2d Cir. 2003). A contrary conclusion would permit the prosecution to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify. Id.

Accordingly, the court focuses its analysis on the merits of Petitioner's Brady claim. "There are three components of a true Brady violation: [1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that

23

evidence must have been suppressed by the State, either willfully or inadvertently, and [3] prejudice must have ensued." Jackson, 345 F.3d at 71 (quoting Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

i.      Evidence Favorable to the Accused

"Evidence is favorable to the accused if it either tends to show that the accused is not guilty or if it impeaches a government witness." United States v. Gil, 297 F.3d 93, 101 (2d Cir. 2002). Here, Petitioner asserts that Ramirez's testimony would have been consistent with his own statement and thus would have supported a justification defense. (Suppl. Appellant Br. at 3.) However, Petitioner has not provided the court with an English version of the statement, and the limited translation provided is insufficient to establish a justification defense or a claim of ineffective assistance. Indeed, even the selective translation merely alleges that the victims may have first approached Petitioner and his co-defendant, but it fails to show that the victims had any weapons. (Pet'r's Suppl. Aff. at 7.) Furthermore, merely asserting that the victims approached the defendants and "struck defendant Dominguez first," is insufficient to establish a justification for the use of deadly force. (Id.) Thus, Ramirez's statement, even if translated, does not satisfy the first element of Brady.

ii.      Suppression by the Government

Petitioner's claim also fails to satisfy the second component of the Supreme Court's test for a Brady violation: failure to disclose the favorable information. Under Brady, "[t]he individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation," and "the prosecutor's good faith or lack of bad faith is relevant." United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995) (citing Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)); see also Giglio, 405 U.S. at 154.

24

Petitioner claims that a copy of Ramirez's statement must exist in English, and that the prosecution failed to disclose it in violation of their Brady obligations. This claim is meritless. First, Petitioner has failed to establish that the prosecution ever prepared a written English version of Ramirez's statement. Second, even if a written translation did exit, this does not satisfy the second requirement of a Brady violation, because the prosecution provided Petitioner with Remirez's actual statement. Brady does not require the prosecution to provide a defendant with a translated version of any statements in their possession. Furthermore, there is an exception to the disclosure obligation where "the defendant or his attorney 'either knew, or should have known, of the essential facts permitting him to take advantage of [that evidence].'" Payne, 63 F.3d at 1208 (quoting United States v. Zackson, 6 F.3d 911, 918 (2d Cir. 1993)). Here, since Petitioner was provided Ramirez's actual testimony, there is no merit to his claim that the Government suppressed this evidence or that he was unaware of the essential facts stated in the testimony. Petitioner's trial counsel has also testified that he had his own English translator read over Ramirez's statement and, had the statement contained any information that would have been helpful to the defense, he "would have certainly used the information in the defense." (Latimer Affirmation at 3.)

### iii. Materiality

Petitioner's Brady claim likewise fails to satisfy the third component of the Supreme Court's test for a Brady violation. This component requires the court to ask "whether petitioner has established the prejudice necessary to satisfy the 'materiality' inquiry." Jackson, 345 F.3d at 73 (quoting Strickler, 527 U.S. at 282). The "touchstone of materiality is a 'reasonable probability' of a different result." Kyles, 514 U.S. at 434. This is not a test for sufficiency of evidence; the defendant must show that "the favorable evidence could reasonably be taken to put

the whole case in such a different light as to undermine confidence in the verdict." Id. at 434-35; see also Coppa, 267 F.3d at 141-44 (discussing evolution of the materiality component of Brady/Giglio claims). The court looks at "the cumulative effect of suppression" in light of the evidence as a whole, Kyles, 514 U.S. at 436-37, and it conducts its "own independent examination of the record in determining whether the suppressed evidence is material," Orena, 145 F.3d at 558.

"[A] new trial is generally not required when the testimony of the witness is 'corroborated by other testimony' or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Jackson, 345 F.3d at 74 (citations omitted) (quoting Payne, 63 F.3d at 1210); see also Gil, 297 F.3d at 103 ("Where the evidence against the defendant is ample or overwhelming, the withheld Brady material is less likely to be material than if the evidence of guilt is thin."); Orena, 145 F.3d at 559; cf. Leka, 257 F.3d at 104 ("[W]hen a conviction is supported by overwhelming evidence of guilt, habeas relief is not warranted.").

In the present case, the jury's verdict was supported by compelling evidence, including the testimony of several eyewitnesses and the victims themselves. Moreover, the undisclosed materials were of limited utility, and there is no reasonable probability that there would have been a different result if Ramirez's statement had been used at trial. As discussed above, all Ramirez's testimony is alleged to include is a claim that the victims approached Petitioner first and instigated the fight. (Pet'r's Suppl. Aff. at 7.) Petitioner and Carillo were still armed with a machete and knife and used the weapons against victims who had no weapons themselves. (Id.) Thus, even if Ramirez had testified consistently with Petitioner's version of the events, the outcome of the trial would not have changed, as Petitioner and his accomplice still responded to

the use of ordinary physical force with unjustified, deadly, physical force. No reasonable view of the evidence, even including Ramirez's statement, would have supported a justification defense.

Because Ramirez's statement would not have supported a justification defense, Petitioner's counsel was not deficient for failing to present the statement at trial. Accordingly, Petitioner cannot show prejudice, and this claim fails the Strickland test.

c.     <em>Failure to Object to Trial Court's Final Instructions</em>

Petitioner claims that counsel was ineffective for failing to object to the trial court's instructions that did not specify that, in order for Petitioner to be guilty of intentional murder, he must have had the specific or requisite intent to kill the decedent. This claim relies on the premise that Petitioner could have established a justification defense. However, this court has reviewed the jury charge and finds that the trial court's instructions were proper.

In Strickland, the Supreme Court declared that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. The court finds that no reasonable view of the evidence, even when viewed in the light most favorable to Petitioner, would establish the elements of a justification defense. See People v. Reynoso, 73 N.Y. 2d 816 (1988); People v. Bennett, 279 A.D. 2d 585 (App. Div. 2001); People v. Casado, 177 A.D. 2d 497 (App. Div. 1991). Thus, under these circumstances, any objection to the trial court's instructions on this basis would have been futile.

An examination of the trial testimony, viewed in the light most favorable to Petitioner, reveals that none of the victims any time threatened to use deadly physical force against Petitioner or his accomplice. (Tr. at 444, 486, 542-43.) In Petitioner's statement, which was

admitted at trial, he stated that he and Carillo were seated at a table when some men came over;
Petitioner stood up and asked if there was a problem, at which time one of the men hit him and
he fell to the ground. (Id. at 722.) Thereafter, according to Petitioner, a fight broke out, and
Petitioner began to wave the machete around. (Id.)

Even if Petitioner's version of events were to be believed, Petitioner's decision to use a
machete in a fist fight would make a justification defense unavailable. Thus, the instructions
given by the court were correct, and counsel did not err in his failure to object. Accordingly,
Petitioner cannot show prejudice, and this claim fails the Strickland test.

### d. *Failure to Object when Court did not Swear in Interpreters*

Finally, Petitioner contends that his counsel was ineffective for failing to object when the
trial court did not administer oaths or affirmations to the interpreters at his trial. Although the
record does not indicate whether the court administered an oath or affirmation, Petitioner has
failed to show prejudice, and this claim, too, fails the Strickland test.

Petitioner claims that the interpretations were inaccurate based solely on the differences
in length of the questions asked and answers given. (Suppl. Appellant Br. at 14.) Petitioner also
alleges that he expressed these concerns to his counsel, Mr. Latimer, at various times to no avail.
(Id.) However, this allegation is belied by Latimer's affirmation, which states that Petitioner
never told him that the interpreters were not translating accurately and, had Petitioner said
anything about inaccurate interpretation, Latimer would have immediately brought this to the
court's attention and remedied the problem. (Latimer Affirmation at 3.) Moreover, Petitioner
has not identified any specific instances of inaccurate translations, beyond merely conclusory
allegations, nor has he shown any prejudice resulting from such hypothetical inaccuracies.
Accordingly, Petitioner cannot show any prejudice to his defense, and this claim is denied.

*   *   *   *

28

Petitioner has failed to show that his counsel's performance was deficient in any way. Consequently, he cannot show that counsel's performance prejudiced his defense to the extent that he was deprived of a fair trial. See Player, 785 F. Supp. at 344-45; Strickland, 466 U.S. at 687. Accordingly, all of Petitioner's ineffective-assistance claims fail, under Strickland, on the merits.

## C. Motion in Abeyance

Finally, Petitioner requests a stay so that he may return to state court and exhaust his claim of ineffective assistance of trial counsel, pending the determination of his FOIL requests by the QDAO and the NYPD. (Pet. at 4.) For the following reasons, the court denies Petitioner's request for a stay.

A district court may stay a mixed petition and hold it in abeyance until after the petitioner exhausts any previously unexhausted claims in state court "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Rhines v. Weber, 554 U.S. 269, 278 (2005).

In this case, however, the Petition is not mixed. Although Petitioner has raised a claim that he did not raise in state court, the claim is, nonetheless, procedurally barred because Petitioner no longer has a state court forum in which to raise it. Moreover, although Petitioner requests a stay until his FOIL applications are resolved, he has failed to articulate the relevance of the documents he has requested or what claims he plans to raise based on those documents.

The Court in Rhines expressed concern that, if stay and abeyance relief is employed too frequently, it has the potential to undermine two important purposes of AEDPA: It (1) frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the

federal proceedings, and (2) undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Id. at 277.

For these reasons, stay and abeyance relief should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, such relief is only appropriate when the district court determines there was good cause for the petitioner's failure. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Petitioner has not established good cause for a stay and has failed even to articulate the nature of the claim he wishes to raise and exhaust in state court. See Faden v. Annetts, No. 05-CV-1850 (DF), 2005 WL 1765714, at *1 (S.D.N.Y. July 26, 2005) (denying petitioner's application for a stay where petitioner did not inform the court of the nature of the claims he sought to exhaust).[10] Therefore, Petitioners request for a stay is denied.

## IV. Conclusion

For the reasons set forth above, Dominguez's Petition for a writ of habeas corpus (Dkt. 1) is DENIED. Because Petitioner has not made a substantial showing of the denial of a

---

[10] It is unlikely that Petitioner would be able to raise any colorable claim based on the documents he requests. First, some of the documents he requests (such as the QDAO Intake Bureau documents, Data Analysis and grand jury synopsis sheets) are nonexistent. (See Resp't's Opp'n at 11 n.3.) Next, it is unclear why Petitioner needs a copy of the recorded statement he made to the police, as he should be aware of the statement he, himself, made, and he already should be able to raise any claims based off of such a statement. Lastly, although it is unlikely that the police follow-up reports contain any information that would give rise to a federal claim, the State has already provided the reports requested by Petitioner. (See id.)

constitutional right, no certificate of appealability shall issue. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this judgment would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.

      SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      February _6_, 2016

NICHOLAS G. GARAUFIS
United States District Judge